**CONSOL PENNSYLVANIA COAL COMPANY, LLC, Petitioner**

v.

**FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION; Secretary United States Department of Labor, Respondents**

No. 16-2643

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit L.A.R. 34.1(a) December 19, 2016

(Filed: December 20, 2016)

Patrick W. Dennison, Esq., R. Henry Moore, II, Esq., Jackson Kelly, Pittsburgh, PA, for Petitioner

Michael A. McCord, Esq., John T. Sullivan, Esq., Federal Mine Safety and Health Review Commission, Washington, DC, for Non-Participating

Walter C. Schumann, Esq., United States Department of Labor, Office of the Solicitor, Arlington, VA, Emily C. Toler, Esq., Solicitor of Labor, Division of Mine Safety and Health, Arlington, VA, for Respondent

Before: SMITH, Chief Judge, McKEE, and SHWARTZ, Circuit Judges

OPINION *

SMITH, Chief Judge.

On April 1, 2014, a new slope hoist was commissioned into service at the Oak Springs Portal of the Enlow Fork Mine owned by Consol Pennsylvania Coal Com-

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

pany, LLC (Consol). On April 10, 2014, Jason Tungate, an inspector with the Mine Safety & Health Administration, conducted an inspection and thereafter issued three citations against Consol. Consol challenged these citations. *See* 30 U.S.C. § 815(d). After conducting a hearing, an Administrative Law Judge (ALJ) upheld the three citations. *See* 30 U.S.C. § 823(d)(1). The Federal Mine Safety and Health Review Commission denied Consol's petition for review of the ALJ's decision, thereby rendering the ALJ's decision final. *Id.* This timely petition for review followed. We have jurisdiction under 30 U.S.C. § 816(a)(1). We review factual findings for substantial evidence and legal issues de novo. *Cumberland Coal Res., LP v. FMSHRC*, 515 F.3d 247, 252 (3d Cir. 2008). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). For the reasons set forth below, we will deny the petition for review.

Consol's petition challenges only two of the three citations. Citation No. 7018138 (No. 138) cited Consol for failing to report that in the days following the commissioning ceremony the Oak Springs hoist sustained several problems which rendered it inoperable, thereby qualifying as an accident under 30 C.F.R. § 50.2(h)(11). *Id.* (providing that damage to hoisting equipment that interferes with the use of the equipment for more than thirty minutes qualifies as an "accident"). Coal mine operators are required to report such accidents within 15 minutes when they know or should know that an accident has occurred. 30 C.F.R. § 50.10(d). Citation No. 138 charged, *inter alia*, that this failure to report a violation was of "high negligence."

The second citation, No. 7018140 (No. 140), cited Consol for failing to perform the mandatory daily examinations of the new hoist in the nine day period following the April 1 commissioning ceremony. *See* 30 C.F.R. §§ 75.1400 (d); 75-1400-3; 75-1400-4. This citation assessed the gravity of the violation as "reasonably likely that an accident would occur due to this unwarrantable failure of a mandatory standard," charged that the violation was "significant and substantial," and graded the violation as one of "high negligence."

A determination that a mandatory safety standard violation was "high negligence" means that the operator "knew or should have known of the violative condition or practice and there are no mitigating circumstances." 30 C.F.R. § 100.3(d). "The real gravamen of high negligence is that it suggests an aggravated lack of care that is more than ordinary negligence." *Mach Mining, LLC v. Sec'y of Labor*, 809 F.3d 1259, 1264 (D.C. Cir. 2016) (internal quotation marks and citations omitted).

> In order to establish that a violation of a mandatory safety standard is significant and substantial ..., the Secretary of Labor must prove: (1) the underlying violation of a mandatory safety standard; (2) a discrete safety hazard—that is, a measure of danger to safety—contributed to by the violation; (3) a reasonable likelihood that the hazard contributed to will result in an injury; and (4) a reasonable likelihood that the injury in question will be of a reasonably serious nature.

*Sec'y of Labor v. Mathies Coal Co.*, 6 FMSHRC 1, 3-4 (1984). This "inquiry considers 'the violative conditions as they existed both prior to and at the time of the violation and as they would have existed had normal operations continued[,]' ... 'without any assumptions as to abatement.'" *Mach Mining*, 809 F.3d at 1267

168

(citations and emphasis omitted). The "unwarrantable failure" assessment reflects "conduct that is described as not justifiable or inexcusable." *Youghiogheny & Ohio Coal Co. v. Sec'y of Labor*, 9 FMSHRC 2007, 2010 (1987) (internal quotation marks omitted). It is "aggravated conduct, constituting more than ordinary negligence." *Id.*

Consol admitted that the alleged violative conduct for Citation Nos. 138 and 140 occurred, but it challenged the ALJ's decision to uphold Inspector Tungate's assessment as to the gravity of these violations. According to Consol, its conduct was nothing more than ordinary negligence. In its view, substantial evidence was lacking to support the ALJ's finding, resulting in several legal errors in the ALJ's analysis.

■ We begin with the latter citation, No. 140. The failure to conduct the mandatory daily inspections for nine days hinges on the date that the new slope hoist was turned over to Consol. Even though the slope hoist was tested on April 1, 2014, Consol argued that the ALJ erred in determining that the hoist was turned over on that date because the commissioning of the slope hoist was not completed until near the end of the nine day period underlying the citation. Relying on the testimony of Christopher O'Neil, its Assistant Manager of Maintenance, Consol submits that the hoist was not turned over until O'Neil signed the Commission Certification on April 7. On that date, Consol pointed out, the slope hoist was inoperable because of a kink in the hoist rope and other mechanical issues, placing it out of service until repairs could be completed.

We conclude there is substantial evidence to support the ALJ's finding that the hoist was turned over to Consol on April 1, 2014. The ALJ fully considered the conflicting evidence and permissibly accorded great weight to the documentary evidence that indicated the commissioning

was completed on April 1, thereby effecting the turn over of the slope hoist to Consol on that date. *See* JA154, 159-160, 163, 167. Nor is there any error by the ALJ in fully crediting the testimony from Consol's hoist operator Brian Henry and Maintenance Supervisor Chris Demidovich, which reflected their understanding that the hoist was operational and that, consistent with that understanding, Demidovich initiated weekly electrical inspections on April 3. JA51-52, 108-09, 156.

■ Having concluded that the April 1 commissioning ceremony turned the slope hoist over to Consol, and cognizant that Consol knew of its obligation to perform the daily examinations of all of its hoists, the ALJ permissibly found that Consol should have known that it was obligated to perform the mandatory daily examinations of the hoist. Indeed, Demidovich appreciated the need to initiate electrical inspections of the new hoist and had inspections performed on April 3 and 4. While Consol contends that the ALJ ignored several mitigating circumstances, we are not persuaded. The ALJ's decision thoughtfully addressed why the circumstances Consol pressed did not justify Consol's failure to comply with the mandatory safety standards applicable throughout its coal operations. We recognize Consol's arguments that there was a miscommunication with the contractor, that it did not have actual knowledge that the contractor was no longer examining the hoist on a daily basis, that the new hoist had safety features that reduced the danger created by missed inspections, that its employees were not fully trained in operating the hoist until April 3, and that the hoist was not fully operational and was out of service for repairs. We conclude, however, that these circumstances simply highlight that the evidence could have supported different findings. In any event, "an ALJ may find 'high negli-

gence' in spite of mitigating circumstances." *Mach Mining*, 809 F.3d at 1264 (internal quotation marks and citation omitted). We are not free to substitute our view of the evidence in conducting a substantial evidence review. *Jamesway Corp. v. N.L.R.B.*, 676 F.2d 63, 66 (3d Cir. 1982); *Cumberland Coal Res. v. FMSHRC*, 717 F.3d 1020, 1028 (D.C. Cir. 2013).

Moreover, as the ALJ pointed out, the regulations mandating daily inspections of hoisting equipment do not provide any exceptions to the examination requirement. 30 C.F.R. §§ 75.1400(d), 75.1400-3, 75-1400-4. With this in mind, our review of the ALJ's decision shows that he appropriately explained the factual underpinnings, which rest on substantial evidence, of the "significant and substantial" violation, the "unwarrantable failure" assessment and the "high negligence" charge. Accordingly, we will not disturb those determinations.

■ With regard to Citation No. 138, which was issued for failing to report the accident as defined by regulation 30 C.F.R. § 50.2(h)(11), we reject Consol's contention that substantial evidence is lacking. In light of our determination that substantial evidence supports the ALJ's finding that the hoist was turned over to Consol on April 1, it follows that substantial evidence also supports the ALJ's determination that Consol had the responsibility for reporting any interference with the operation of the hoisting equipment. Yet management, who knew the hoist was inoperable because of the kinked hoist rope, failed to comply with the mandate to report that the hoist was out of service. While Consol emphasizes that the hoist was not being used regularly for production purposes and was therefore in the same state that it had been when the contractor bore responsibility for the hoist, this argument is incompatible with the ALJ's finding that the hoist was commissioned and turned over to Con-

sol on April 1. For that reason, we conclude that the ALJ appropriately rejected this argument in light of the absence of any exemptions in the regulations which mandate immediate notification when a hoist is inoperable for more than 30 minutes. *See* 30 C.F.R. §§ 50.2(h)(11); 50.10. Given the safety concerns behind the regulations, the knowledge by Consol's management that the hoist would be out of service for a period of time in light of mechanical issues, and the ALJ's findings, we will uphold the ALJ's assessment that the violation in No. 138 was of "high negligence."

For the reasons set forth above, we will deny Consol's petition for review.